UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

MICHAEL LAVEL PAGE,

       Petitioner,

                                 Criminal No.: 4:13cr63
v.                                Civil No.: 4:14cv40

UNITED STATES OF AMERICA,

       Respondent.

## OPINION AND ORDER

This matter is before the Court on Michael Lavel Page's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). ECF No. 39. Petitioner alleges three grounds for relief. The Court finds that an evidentiary hearing is unnecessary because the record conclusively shows Petitioner is entitled to no relief. See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a). For the reasons stated below, Petitioner's § 2255 Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 12, 2013, officers from the Newport News Police Narcotics Enforcement Unit executed a search warrant at Petitioner's residence. During the search, the officers discovered thirty-two ounces of marijuana, twelve doses of N-Benzylpiperazine (a Schedule I controlled substance), .8 grams of synthetic marijuana, three digital scales, a loaded .45

caliber semi-automatic Taurus pistol, thirteen rounds of ammunition, a black bullet-resistant vest, and $3,620.50 in cash. After being advised of his rights, Petitioner admitted: (1) that the drugs belonged to him; (2) that he sold between a half pound and a pound of marijuana daily from this residence; (3) that the .45 caliber pistol belonged to him; and (4) that he sold pills in the past.

On June 12, 2013, a grand jury returned a multi-count indictment charging Petitioner with: (1) Possession with Intent to Distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) ("Count One"); (2) Possession with Intent to Distribute N-Benzylpiperazine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count Two"); (3) Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count Three"); and (4) Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1) ("Count Four"). Indictment, ECF No. 1. On August 8, 2013, Petitioner pleaded guilty to Count Four pursuant to a written plea agreement. Plea Agreement, ECF No. 18. On October 22, 2013, the Probation Officer submitted a Presentence Report ("PSR") detailing, inter alia, Petitioner's criminal history, educational background, employment status, and extensive information chronicling Petitioner's history of mental and emotional health issues. ECF

2

No. 31.  On October 24, 2013, the Court found Petitioner guilty as to Count Four of the Indictment and sentenced Petitioner to sixty months' imprisonment (the statutory mandatory minimum sentence for such count), a five-year term of supervised release, and $100 special assessment.  Judgment, ECF No. 34.  On the Government's motion, the Court dismissed the remaining counts alleged in the Indictment.

On April 10, 2014, Petitioner timely filed his § 2255 Motion with a Memorandum in Support of Motion.[1]  ECF No. 39.  On July 7, 2014, the Court ordered the Government to respond to Petitioner's § 2255 Motion within sixty days of its Order.  ECF No. 41.  On August 18, 2014, the Government moved for an extension of time to file its answer.  ECF No. 43.  By Order of August 18, 2014, the Court granted the motion and directed the Government to respond by November 4, 2014.  ECF No. 44.  On November 4, 2014, the Government filed its response to the § 2255 motion.  ECF No. 47.  On November 28, 2014, Petitioner moved for an extension of time to reply to the Government's response.  ECF No. 48.  By Order of December 5, 2014, the Court granted such motion.  ECF No. 50.  On January 29, 2015, Petitioner filed his reply.  Accordingly, the matter is now ripe for disposition.

---

[1] Pursuant to 28 U.S.C. § 2255(f)(1), Petitioner filed his motion within one year of the date his conviction became final, November 8, 2013.

3

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and

4

customary method of correcting trial errors." <u>United States v. Allgood</u>, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). To the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982). The "higher hurdle"—the procedural default bar—that applies to claims advanced for the first time in a § 2255 action exists because, once a Petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." <u>Id.</u> at 164-65. Accordingly, a § 2255 "collateral challenge may not do service for an appeal." <u>Id.</u> at 165.

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. <u>See United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting <u>United States v. Williams</u>, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the

record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (citing Massaro v. United States, 538 U.S. 500, 504-06 (2003)).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a petitioner "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82

(1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence

7

in the outcome." Id. at 694. The Court applies a slightly modified prejudice standard when a petitioner alleges ineffective assistance associated with the entry of a guilty plea, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

Petitioner's § 2255 Motion asserts three grounds for relief. First, Petitioner argues that the Court should vacate his § 924(c) conviction in light of Alleyne v. United States, 133 S. Ct. 2151 (2013). Second, Petitioner asserts two claims of ineffective assistance of counsel. The Court will begin with a brief discussion of Petitioner's Alleyne claim because Petitioner withdrew such claim in his reply. ECF No. 51. The Court will then turn to each of Petitioner's ineffective assistance of counsel claims.

### A. Petitioner's Alleyne Claim

In his § 2255 Motion, Petitioner originally argued that the Court should vacate his § 924(c) conviction in light of Alleyne.

8

However, Petitioner withdrew this claim in his reply to the Government's response. Petitioner now asserts "that there is no Alleyne claim that is remotely meritorious." Pet'r's Reply Supp. § 2255 Mot. at 2, ECF No. 51. The Court acknowledges Petitioner's withdrawal of any claim predicated on Alleyne and, therefore, **DENIES** such claim as withdrawn.[2]

### B. Ineffective Assistance of Counsel Claims

Petitioner's second and third claims allege ineffective assistance of counsel. Specifically, Petitioner asserts that defense counsel provided constitutionally deficient assistance by (1) failing to "move the court at pretrial for a full mental evaluation" and (2) failing to ask for a downward variance or

---

[2] Assuming, arguendo, that Petitioner had not withdrawn his claim under Alleyne, the Court finds that such claim, in the alternative, fails on its merits. In Alleyne, the Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155. However, Alleyne is inapplicable in this case because Petitioner waived his right to trial by jury when he pleaded guilty to Count Four. At the Rule 11 colloquy, Petitioner acknowledged that he understood his right to a trial by jury on Count Four and that "if the Court accepts your guilty plea, there will be no trial of any kind in the matter." Plea Hr'g Tr. at 11-12, ECF No. 45. Thereafter, with full knowledge of his right to trial by jury, Petitioner pleaded guilty to Count Four because he was, in fact, guilty of such offense. Id. at 20. Accordingly, even though Alleyne, as a general matter, required any fact that could increase the mandatory minimum sentence for Count Four to have been found by a jury, Alleyne did not require the Court to vacate Petitioner's conviction because, by pleading guilty, Petitioner waived his right to have a jury determine the facts with respect to Count Four. See, e.g., United States v. Yancy, 725 F.3d 596, 601 (6th Cir. 2013) ("[W]hen a defendant knowingly admits the facts necessary for a sentence enhancement in the context of a plea, simultaneously waiving his Sixth Amendment right to a jury trial, no Apprendi problem arises."). Therefore, assuming Petitioner had not withdrawn his Alleyne claim, the Court **DENIES** such claim.

departure from the sentencing Guidelines. Id.; Pet'r's Mem. Supp. § 2255 Mot. at 18-19, 24-25, ECF No. 40. With respect to the first ineffective assistance claim, Petitioner alleges that a mental evaluation prior to his plea "not only would have given defense counsel a massive bargaining chip during the plea negotiation process, but also would have provided defense counsel with the mitigating factors to request a downward variance at sentencing pursuant to U.S.S.G. § 5k2 [sic]." Pet'r's Mem. Supp. § 2255 Mot. at 18-19. Regarding his second ineffective assistance claim, Petitioner argues that he would have received a significantly lower sentence had counsel moved for a downward departure or variance based on Petitioner's mental health issues. The Court will assess each of Petitioner's ineffective assistance of counsel claims in turn.

### 1. Failure to Request Full Mental Evaluation

Petitioner's initial ineffective assistance of counsel claim derives from counsel's alleged failure to request a psychological evaluation to "determine Petitioner's psychological history, his cognitive state at the time of the offense, and his subsequent culpability concerning his conviction." Pet'r's Mem. Supp. § 2255 Mot. at 18. Liberally construing Petitioner's pleadings, the Court construes such allegations as a claim that Petitioner received ineffective assistance of counsel in connection with his guilty plea because

10

counsel failed to request a competency evaluation.[4] Petitioner has demonstrated neither deficient performance, nor prejudice under Strickland.

---

[4] To the extent Petitioner contends that he received ineffective assistance of counsel because his attorney failed to adequately explore the availability of a defense to Count Four based on Petitioner's alleged mental health history, the Court concludes that Petitioner has failed to allege sufficient facts to carry his burden under Strickland. "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Such presumption creates "a formidable barrier in any subsequent collateral proceedings." United States v. White, 366 F.3d 291, 296 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74). Because "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false" except in the case of extraordinary circumstances. United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005). Here, Petitioner stated under oath that he discussed all of the facts of the case with his counsel and was satisfied that his attorney had fully considered all of the facts and any possible defenses to the charges against him. Plea Hr'g Tr. at 6, 14, ECF No. 45. Additionally, Petitioner indicated that he: had received and reviewed the indictment, id. at 6; had reviewed the indictment with his attorneys, id.; and understood the elements the Government would need to prove to convict him under Count Four, id. at 7. Thereafter, the Court read Count Four of the indictment to Petitioner and Petitioner pleaded guilty to that charge because he was, "in fact, guilty" of that offense. Id. at 20. Accordingly, Petitioner's sworn statements indicating that he was satisfied that counsel had fully explored any available defense to the offense of conviction and Petitioner's admission—having reviewed the indictment, discussed the case with counsel, and fully understanding the elements of the offense—that he pleaded guilty to Count Four because he was, in fact, guilty, belie Petitioner's contrary assertion in his § 2255 motion that counsel failed to adequately explore a defense to Count Four based on Petitioner's mental health by failing to seek a mental evaluation. Moreover, Petitioner has alleged no facts that explain how any mental illness from which Petitioner was suffering might have established a defense to his offense of conviction, Possessing a Firearm in Furtherance of a Drug Trafficking Crime. Therefore, Petitioner has failed to rebut the presumption of verity that attaches to his sworn statements at the Rule 11 colloquy, and the Court **DENIES** Petitioner's motion to the extent he asserts that counsel provided constitutionally deficient assistance by failing to explore a defense to Count Four based on Petitioner's mental health.

First, Petitioner has failed to allege facts demonstrating that counsel's failure to request a mental evaluation "fell below an objective standard of reasonableness" for competent counsel.  Under Strickland's deficient performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "An attorney's duty . . . does not mandate the exploration of the issues of sanity and/or competency in every instance. Where, however, the facts known and available, or with minimal diligence accessible, to defense counsel raise a reasonable doubt as to a defendant's mental condition, counsel has an affirmative obligation to make further inquiry." Wood v. Zahradnick, 430 F. Supp. 107, 111 (E.D. Va. 1977) (internal citation omitted), aff'd, 578 F.2d 980 (4th Cir. 1978). "And where such reasonable doubt arises, a lawyer 'is not entitled to rely on his own belief about a defendant's mental condition,' but instead must make a reasonable investigation when the facts known and available raise a question as to a defendant's competence." Mann v. United States, 66 F. Supp. 3d 728. 736 (E.D. Va. 2014) (quoting Becton v. Barnett, 920 F.2d 1190, 1192 (4th Cir. 1990)).

In this case, Petitioner has failed to adequately allege that the facts known to defense counsel would raise a reasonable doubt as to Petitioner's mental condition at the time of his

guilty plea.  To the contrary, the record clearly indicates that a reasonable attorney in counsel's position could have concluded that Petitioner was competent and capable of entering an informed plea.

The Court originally had scheduled Petitioner's plea hearing on July 30, 2013.  However, when the Court convened such hearing, defense counsel sought a continuance.  Defense counsel sought such continuance for two reasons.  First, Petitioner had taken medication the morning of the hearing that made him very drowsy.  Continuance Hr'g Tr. at 2, ECF No. 46.  Counsel indicated that "[a]lthough [Petitioner] does feel that he can go forward with the hearing, I have some lingering concerns."  Id. Second, counsel stated that "more importantly, [Petitioner] has raised some concerns about some language in one of the paragraphs of the plea agreement that we cannot resolve until consulting [with a supervisory attorney for the Government]," who was not available.  Id.  Based on defense counsel's representations, the Court re-scheduled Petitioner's plea hearing.

On August 8, 2013, the Court held the plea hearing that it had continued at defense counsel's request.  At the outset of the hearing, Petitioner agreed to interrupt the Court and ask the Court to rephrase any question that he did not understand. Plea Hr'g Tr. at 3.  The Court also informed Petitioner that he

could confer with defense counsel at any time, and Petitioner indicated the he understood that he could do so.  Id. at 4. Thereafter, during the plea colloquy, the Court inquired about whether Petitioner was "taking any medication or suffering from any illness that might affect your ability to understand these proceedings." Id. at 5.  Petitioner stated that he was taking two medications; however, Petitioner indicated that such medications did not affect his ability to understand the proceedings because he had taken them in the morning and any effects had worn off by the time of the plea colloquy (which commenced at 2:55 p.m.). Id. at 2, 5.  Based on Petitioner's response, the Court then asked Petitioner: "will you agree that if you don't understand my question for any reason, [whether] it's because of your medication or for any other reason, will you stop me and not answer the question until you're certain you understand it?" Id. at 5.  Petitioner agreed.  The Court then asked Petitioner whether he was taking any other medications or if there was "any illness that might affect your ability to understand these proceedings." Id. at 5-6.  Petitioner's only response was that he was taking blood pressure medicine. Id. at 6.  But Petitioner then confirmed that such medication would not affect his ability to understand the proceedings. Id.  The Court then instructed Petitioner "[w]ell, as we go along, Mr. Page, if you don't understand, please stop me, we can confer

14

with your attorney or I will try and explain the question.   But please don't answer unless you understand the question, all right?"   Id. at 6.   Petitioner responded, "Yes."   Id.   Thus, during the plea colloquy, Petitioner agreed, three separate times, that he would interrupt the Court if, at any time, he did not understand the proceedings.   However, Petitioner neither interrupted the Court to indicate that he did not understand the proceedings, nor displayed any signs of incompetence or the inability to fully understand the proceedings.

At the plea hearing, the Court also questioned defense counsel about Petitioner's competency.   Counsel affirmed that Petitioner had "been competent and able to cooperate with [her] in the case," that she had "discussed the facts of the case in detail with him," and that she was satisfied that Petitioner was not under the influence of any drugs other than those he described.   Id. at 18-19.   Importantly, when the Court asked counsel whether she was "satisfied that the ones he described would not affect his ability to understand and participate in these proceedings," counsel responded: "They do not appear to be affecting [him]. He seems to be quite lucid today."   Id. at 19.   Counsel then confirmed that she knew of no reason of any nature that would prevent Defendant from pleading guilty at the time of the hearing.   Id.

The record indicates that the facts known by defense counsel at the time Defendant pleaded guilty to Count Four did not establish a reasonable doubt as to defendant's mental condition. Petitioner asserts that his "long-standing well-documented psychological disorders" required a reasonable attorney in counsel's position to request a full mental evaluation of Petitioner prior to any plea. To be sure, the Court is aware that Defendant has some history of mental illness. And the Court understands that Petitioner took medication the morning before the hearing. However, in the cases in which courts have concluded that facts established a reasonable doubt as to the petitioner's mental condition, thereby imposing on counsel a duty to make a reasonable investigation, the petitioners have exhibited a far greater degree of potential mental impairment than Petitioner. For example in Wood v. Zahradnick and Beckton v. Barnett, the defendants were accused of the senseless, heinous crime of raping an elderly woman and had displayed other bizarre behavior. See Becton, 920 F.2d at 1193; Wood, 578 F.2d at 982; see also Mann, 66 F. Supp. 3d at 378-79 (refusing to find ineffective assistance of counsel for failure to request competency hearing where the petitioner displayed competency throughout the proceedings but previously suffered from drug abuse, polio, and meningitis). Petitioner has not alleged any

16

facts involving bizarre or heinous behavior that would have placed defense counsel on notice of a potential mental illness. To the contrary, in this case, the record demonstrates nothing that would have caused a reasonable attorney in defense counsel's position to doubt Defendant's mental capacity at the time of the plea. At the time of the first scheduled plea hearing, apparently despite Petitioner's position that he could go forward with the hearing, defense counsel sought a continuance expressly because of "lingering concerns" that Petitioner's morning medications had made him "very drowsy." See Continuance Hr'g Tr. at 2. Such fact demonstrates that defense counsel was well attuned to Petitioner's mental state. Yet defense counsel expressed no such concerns immediately prior to the entry of Petitioner's plea. At the hearing, counsel affirmed that Petitioner had "been competent and able to cooperate with [her] in the case," that she had "discussed the facts of the case in detail with him," and that she was satisfied that Petitioner was not under the influence of any drugs other than those he described. Id. at 18-19. And when the Court asked counsel whether she was "satisfied that the ones he described would not affect his ability to understand and participate in these proceedings," counsel responded: "They do not appear to be affecting [him]. He seems to be quite lucid today." Id. at 19. Indeed, the record from the plea hearing

17

demonstrates that a reasonable attorney in counsel's position had no reason to doubt Petitioner's mental state at the time of the hearing. Thrice, Judge Miller instructed Petitioner to interrupt the proceedings if Petitioner did not understand the Court's questions. Thrice, Petitioner agreed. However, the record is devoid of any expression of confusion or misunderstanding on Petitioner's part. By contrast, at the first scheduled hearing, the record shows that defense counsel sought a continuance, in part, because Petitioner—though in a very drowsy state from his medication—had indicated that he had "concerns about some language in one of the paragraphs of the plea agreement." Continuance Hr'g Tr. at 2. Thus, given that Petitioner had previously communicated concerns to defense counsel regarding the plea agreement, Petitioner appeared competent in interactions with counsel, and Petitioner never expressed any confusion or lack of understanding at the plea hearing (despite the Court's threefold warning and a prior continuance to resolve concerns about the plea agreement raised by Petitioner), Petitioner has not alleged facts establishing that the "facts known and available, or with minimal diligence accessible, to defense counsel raise[d] a reasonable doubt as to [Petitioner's] mental condition." See Wood, 430 F. Supp. at 111. Therefore, Petitioner has failed to rebut the presumption that defense counsel's performance was objectively reasonable

and his first ineffective assistance of counsel claim fails under the first prong of Strickland.

Even if Petitioner's claim had satisfied the first prong of Strickland, Petitioner has failed to demonstrate prejudice from defense counsel's allegedly deficient performance. To establish prejudice in the context of Petitioner's guilty plea, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill, 474 U.S. at 59). Here, Petitioner alleges no facts indicating that he would have refused to plead guilty and insisted on going to trial if counsel had sought a mental evaluation of Petitioner. Rather, Petitioner alleges that a mental evaluation would have "given defense counsel a massive bargaining chip during the plea negotiation process" and "also would have provided defense counsel with the mitigating factors to request a downward variance at sentencing." Pet'r's Mem. Supp. § 2255 Mot. at 18-19. And Petitioner describes, at length, how a mental evaluation would have demonstrated that he suffered from a mental illness. Id. at 19-21. However, Petitioner's allegations do not permit the Court to reasonably infer that, had counsel sought a mental evaluation, Petitioner would have refused to plead guilty and insisted on going to trial because

19

they do not suggest, in any way, that a mental evaluation would have altered Petitioner's ultimate decision to plead guilty rather than proceed to trial. Therefore, Petitioner has failed to sufficiently allege prejudice from counsel's alleged failure to request a mental evaluation, and his ineffective assistance of counsel claim based on such alleged failure cannot meet the second prong of Strickland. Accordingly, the Court **DENIES** such claim because Petitioner has established neither deficient performance nor prejudice under Strickland.

### 2. Failure to Argue for Downward Variance and/or Departure

The Court will now consider Petitioner's final remaining claim, his claim that he received ineffective assistance of counsel because defense counsel failed to adequately argue for a downward variance or departure. More specifically, Petitioner asserts that §§ 5K2.0 and 5K2.13 of the Sentencing Guidelines allowed for a downward departure based on Petitioner's alleged diminished mental capacity. Petitioner argues that "it is highly probable that Petitioner would have received a significantly lower sentence" if defense counsel had sought a downward departure, and that counsel's failure to do so constituted ineffective assistance of counsel. Pet'r's Mem. Supp. § 2255 Mot. at 25. Furthermore, Petitioner asserts that his case was "prime for a downward variance due to [his] well-

established cognitive and psychological disorders . . . ." Id. at 21.

As an initial matter, it is somewhat unclear from Petitioner's pleadings whether he asserts that he received constitutionally deficient assistance of counsel because defense counsel failed to seek a downward departure, a downward variance, or both. In alleging his final ineffective assistance claim, Petitioner sometimes confuses variances with departures under the Guidelines. To clarify:

> "Departure" is a term of art under the Guidelines and is distinct from "variance." A Guidelines "departure" refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § [5K2.13]. A "variance" refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a). While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct.

United States v. Mitchell, 681 F.3d 867, 880 n.60 (6th Cir. 2012) (quoting United States v. Grams, 566 F.3d 683, 686-87 (6th Cir. 2009) (per curiam)); United States v. Rivera-Santana, 668 F.3d 95, 100 n.6 (4th Cir. 2012). Liberally construing the pro se Petition, the Court will assess whether Petitioner has sufficiently alleged ineffective assistance of counsel based on

21

counsel's failure to seek either a downward departure or downward variance due to Petitioner's mental health issues.

Petitioner has failed to establish deficient performance or prejudice from counsel's failure to request a downward departure or variance because Petitioner received the mandatory minimum sentence for the offense of conviction and the Court lacked the authority to vary or depart downward from such statutory minimum. Petitioner pleaded guilty to Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1). Such offense carried a five-year mandatory minimum term of imprisonment. 18 U.S.C. § 924(c)(1). In addition, the advisory Guidelines sentence for Defendant's offense was the mandatory minimum term of imprisonment, five years. U.S.S.G. § 2K2.4(b) (2012). Congress and the President have narrowly limited the circumstances in which a court may impose a sentence below a statutory mandatory minimum. A court may only do so: on motion of the Government to reflect Defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense," 18 U.S.C. § 3553(e), or pursuant to the statutory safety-valve exception, id. § 3553(f). See United States v. Allen, 450 F.3d 565, 568 (4th Cir. 2006). In this case, the Government did not file a motion under 18 U.S.C. § 3553(e) and the safety-valve exception did not apply to Petitioner. Accordingly, the Court

lacked the authority to sentence Petitioner below the five-year mandatory minimum sentence prescribed for Petitioner's violation of 18 U.S.C. § 924(c)(1). The Court imposed that mandatory minimum sentence. Accordingly, defense counsel's decision not to request a downward departure or variance below the statutory mandatory minimum was well within the "wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, because any such motion would have been frivolous given the Court's inability to impose such a sentence. Likewise, Petitioner suffered no prejudice from counsel's alleged failure to adequately argue for a downward departure or variance because Petitioner received the lowest sentence that the Court lawfully could impose. Therefore, the Court will **DENY** Petitioner's claim that he received ineffective assistance of counsel because defense counsel did not adequately argue for a downward departure or variance based on Petitioner's history of mental illness.

### IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Petitioner's § 2255 Motion, ECF No. 39.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C.

§ 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that, because the Court has **DENIED** a certificate of appealability, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit.  R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a).   If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, Phoenix A. Harris, and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

_____ /s/ Mark S. Davis

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 28 , 2015

24